IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAURA JOZEWICZ,<br><br>    Plaintiff,<br><br>vs.<br><br>GGT ENTERPRISES, LLC; K2 CORPORATION; and JARDEN CORPORATION,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:09-cv-00215-CW<br><br>District Judge Clark Waddoups |

## INTRODUCTION

While skiing at Alta ski area, Plaintiff Laura Jozewicz ("Jozewicz") fell and injured her neck. Jozewicz contends she fell because the binding on her skis unexpectedly released due to a product defect. Jozewicz rented the skis from Defendant GGT Enterprises, LLC ("GGT"). At the time of rental, a recall notice was in effect for the binding, but GGT did not remove the product from its rental inventory. Nevertheless, GGT seeks dismissal of Jozewicz's negligence claim on the basis that she signed a release from liability at the time she rented the skis. For the reasons discussed below, the court denies GGT's motion to dismiss.

## FACTUAL BACKGROUND

On March 17, 2008, GGT rented skis to Jozewicz. On March 18, 2008, Jozewicz fell and injured her neck while skiing at Alta ski area. Jozewicz claims her fall occurred when the Marker MI Demo binding on her rental ski released unexpectedly. Jozewicz alleges that Defendants K2 Corporation and Jarden Corporation (collectively "K2/Jarden") manufactured the ski binding. Prior

to Jozewicz's fall, K2/Jarden notified the United States Consumer Product Safety Commission ("Commission") regarding the binding, and the Commission subsequently issued a recall alert on May 30, 2007, due to "Unexpected Release, Fall Hazard."[1] The recall alert stated that "[s]ki shops with these bindings in their rental inventory should not rent this equipment to consumers until it has been upgraded."[2] The recall further stated that "[s]kiers can unitentionally displace a lever at the rear of the binding," which "[i]f it is fully displaced, . . . can result in the unexpected release of the binding and possibly cause the user to fall."[3]

Prior to renting her skis from GGT, Jozewicz signed an "Equipment Rental and Liability Release Agreement," which states in relevant part:

> I understand that the binding system cannot guarantee the user's safety. In downhill skiing, the binding systems will not release at all times or under all circumstances where release may prevent injury or death, nor is it possible to predict every situation in which it will release. . . .
>
> I understand that the sports of skiing, snowboarding, skiboarding, snowshoeing and other sports (collectively "RECREATIONAL SNOW SPORTS") involve inherent risks of INJURY and DEATH. I voluntarily agree to expressly assume all risks of injury or death that may result from these RECREATIONAL SNOW SPORTS, or which relate in any way to the use of this equipment. . . .
>
> I AGREE TO RELEASE AND HOLD HARMLESS the equipment rental facility, its employees, owner, affiliates, agents, officers, directors and the equipment manufacturers and distributors and their successors in interest (collectively "PROVIDERS"), from all liability for injury, death, property loss and damage which results from the equipment user's participation in the RECREATIONAL SNOW

---

[1] Recall Alert (May 30, 2007) (Docket No. 29, Ex. A).

[2] *Id.*

[3] *Id.*

> SPORTS for which the equipment is provided, or which is related in any way to the use of this equipment, including all liability which results from the *NEGLIGENCE* of PROVIDERS, or any other person or cause.
>
> I further agree to defend and indemnify PROVIDERS for any loss or damage, including any that results from claims or lawsuits for personal injury, death, and property loss and damage related in any way to the use of this equipment.[4]

GGT claims the release agreement bars Jozewicz's negligence claim.

## ANALYSIS

### I. STANDARD FOR REVIEW

Defendant GGT brings this motion under Federal Rule of Civil Procedure 12(b)(6). When considering a 12(b)(6) motion, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the nonmoving party."[5] The complaint must include "enough facts to state a claim to relief that is plausible on its face."[6] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7] Consequently, a court does not look at evidence outside of a pleading to determine such motions.[8] If a court does rely "on

---

[4] Equipment Rental & Liability Release Agreement (Docket No. 13, Ex. 2) (emphasis in original).

[5] *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citation omitted).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[7] *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (citation omitted).

[8] *Dobsen v. Anderson*, No. 08-7018, 2008 U.S. App. LEXIS 22820, at *8–9 (10th Cir. Nov. 4, 2008).

material from outside the pleadings, the court converts the motion to dismiss into a motion for summary judgment."⁹  Because the court relies on material outside of the pleadings in this case, the court converts this motion into a motion for summary judgment.

## II. PREINJURY RELEASES

### A. Limitations on Preinjury Releases

Without question, individuals "may contract away their rights to recover in tort for damages caused by the ordinary negligence of others."¹⁰  The Utah Supreme Court has recognized, however, "that preinjury releases are not unlimited in power and can be invalidated in certain circumstances," including when (1) the release offends public policy, (2) the release is for activities that fit within the public interest exception, or (3) the release is unclear or ambiguous.¹¹  The second limitation is not at issue here because "preinjury releases for recreational activities," such as skiing, "cannot be invalidated under the public interest exception."¹²  Likewise, the third limitation is not at issue because Jozewicz conceded during oral argument that the release is not unclear or ambiguous.  Thus, the prevailing issue in this case is whether a public policy concern overwhelms the effect of the preinjury release that Jozewicz signed.

### B. Public Policy Considerations

Preinjury releases must be compatible with public policy to be enforceable.¹³  Previously, the

---

⁹ *Id.* at *9 (quotations and citation omitted).

¹⁰ *Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶ 14, 179 P.3d 760, 765 (citations omitted).

¹¹ *Id.* (citations omitted).

¹² *Id.* ¶ 18.

¹³ *Id.* ¶ 15 (citing *Rothstein v. Snowbird Corp.*, 2007 UT 96, ¶ 7, 175 P.3d 560).

Utah Supreme Court has invalidated preinjury releases when they were contrary to public policy set forth in statutory provisions. The court has recognized that "[w]hen . . . the Legislature clearly articulates public policy, and the implications of that public policy are unmistakable, we have the duty to honor those expressions of policy in our rulings."[14] Thus, in *Hawkins v. Peart*, the Utah Supreme Court held that public policy invalidated a preinjury release signed by a parent on behalf of a minor child.[15] The court looked to Utah statute and found that it "provides various checks on parental authority to ensure a child's interests are protected."[16] In particular, it found that when a child is injured, statutory law precludes a parent from settling a claim, unless the parent is appointed as conservator for the child.[17] Based on this clear legislative intent to protect a minor's interest post injury, the court concluded that a preinjury release for a minor child likewise was unenforceable.[18]

As applicable to this case, Congress has expressed its concern about product defects that pose a significant risk of injury or death. In an effort to protect the public from such defects, it enacted the Consumer Product Safety Act (the "Act"). The stated purpose of the Act is:

> (1) to protect the public against unreasonable risks of injury associated with consumer products; (2) to assist consumers in evaluating the comparative safety of consumer products; (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and (4) to promote research and investigation into the causes and prevention of product-

---

[14] *Rothstein v. Snowbird Corp.*, 2007 UT 96, ¶ 20.

[15] *Hawkins v. Peart*, 2001 UT 94, ¶¶ 12–13, 37 P.3d 1062.

[16] *Id.* ¶ 11.

[17] *Id.* (citing Utah Code Ann. § 75-5-404 (1993)).

[18] *Id.* ¶¶ 12–13.

related deaths, illnesses, and injuries.[19]

Through this legislation, Congress has stated its intent to create laws that protect the public from unreasonable risk of harm from defective products and to provide a uniform regulatory scheme to promote product safety.

Under 15 U.S.C. § 2064(b), manufacturers, distributors, and retailers are required to notify the United States Consumer Product Safety Commission when they become aware a product (1) fails to comply with applicable safety standards, (2) fails to comply with other rules, regulations, standards, or bans under any acts enforced by the Commission, (3) "contains a defect which could create a substantial product hazard," or (4) "creates unreasonable risk of serious injury or death."[20] Recall alerts arising from such notices are specifically designed to prevent serious injuries. Under 15 U.S.C. § 2068, manufacturers and distributors are charged with honoring the recall alerts issued by the Commission. The law in effect at the time of Jozewicz's accident stated:

> It shall be unlawful for any person to –
> (1) manufacture for sale, offer for sale, distribute in commerce, or import into the United States any consumer product which is not in conformity with an applicable consumer product safety standard under this chapter;
> (2) manufacture for sale, offer for sale, distribute in commerce, or import into the United States any consumer product which has been declared a banned hazardous product by a rule under this chapter.[21]

---

[19] 15 U.S.C. § 2051(b) (2010).

[20] *Id.* § 2064(b).

[21] *Id.* § 2068(a)(1)–(2) (2006). This Section was amended on August 14, 2008, after Jozewicz's injury occurred. Section 2068(a) now prohibits the sale, manufacture for sale, distribution, or importation of any product (1) "that is not in conformity with an applicable consumer product safety rule," (2) that is subject to a voluntary corrective action, (3) that is an imminent hazard and subject to a Commission's order, or (4) that is a banned hazardous substance. *Id.* §

Congress enacted the statute to ensure safe products are provided to the public and to limit the risk of injury. Once a manufacturer, distributor, or retailer reports a defect to the Commission and a recall alert is published, the alert would have no effect if other retailers were not required to take action to correct the defect or remove the product from their inventory. The law requires distributors and retailers to heed recall alerts issued by the Commission and ensure defective products are either fixed or not sold.

Jozewicz argues that Congress's public policy concern to prevent unreasonable risk of serious injury or death to the public meets the public policy standard set forth by the Utah Supreme Court, and therefore invalidates her release of GGT's negligence. GGT contends, however, that Congress did not intend for the Consumer Product Safety Act to preempt state law, and no private cause of action exists under 15 U.S.C. § 2064(b). While this is true, this does not nullify the stated public policy concerns that override the right of parties to contract away tort liability. The rental of the ski bindings at issue in this case became unlawful once the recall notice became effective. Public policy should not favor allowing a party to insulate itself from harms caused to others arising from unlawful acts. Moreover, a decision that public policy causes a preinjury release to be invalid in this case does not cause GGT to be held liable under the Act, nor does it preempt state law. It merely recognizes Congress's concern to minimize unreasonable risk to the public of serious injury or death. Such a concern is particularly relevant when a latent defect exists of which distributors and retailers are or should be aware, but not a consumer.

The implication of allowing distributors and retailers to contract away liability for noncompliance with established safety standards would increase the risk of injury and would be

---

2068(a)(1)–(2) (2010).

contrary to Congress's express public policy concerns. Furthermore, validating the release of liability for noncompliance with Federal law would effectively reduce or eliminate the responsibility that distributors and retailers have to make sure the products they sell or rent are safe. Public policy should encourage compliance with safety laws, not disregard for such laws. Due to a strong public interest in ensuring adherence to recall alerts, the court concludes that GGT's release is unenforceable as a matter of public policy.

## **CONCLUSION**

GGT's preinjury release is unenforceable and invalid as a matter of public policy. For this reason, GGT's motion is DENIED.[22]

DATED this 2nd day of June, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[22] Docket No. 12.